1                    UNITED STATES DISTRICT COURT
                       DISTRICT OF MASSACHUSETTS
2

3    _____

4    UNITED STATES OF AMERICA,

5                         Plaintiff,          Criminal Action
                                              No. 12-10025-DJC
6    V.
                                              December 17, 2013
7    RONALD E. BROWN,                         2:00 p.m.

8                         Defendant.
     _____
9


10


11                    TRANSCRIPT OF SENTENCING

12              BEFORE THE HONORABLE DENISE J. CASPER

13                 UNITED STATES DISTRICT COURT

14              JOHN J. MOAKLEY U.S. COURTHOUSE

15                     1 COURTHOUSE WAY

16                    BOSTON, MA  02210


17


18


19


20                 DEBRA M. JOYCE, RMR, CRR
21                   Official Court Reporter
                 John J. Moakley U.S. Courthouse
22               1 Courthouse Way, Room 5204
                       Boston, MA  02210
23                 joycedebra@gmail.com


24


25

```
1    APPEARANCES:

2    FOR THE GOVERNMENT:

3    KENNETH G. SHINE, ESQ.
     United States Attorney's Office
4    Suite 9200
     1 Courthouse Way
5    Boston, MA 02210
     617-748-3686
6
     FOR THE DEFENDANT:
7
     MICHAEL C. ANDREWS, ESQ.
8    Law Offices of Michael C. Andrews
     1 Commercial Wharf West
9    Boston, MA 02110
     617-951-0072
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

1

2          (The following proceedings were held in open

3     court before the Honorable Denise J. Casper, United States

4     District Judge, United States District Court, District of

5     Massachusetts, at the John J. Moakley United States Courthouse,

6     1 Courthouse Way, Boston, Massachusetts, on December 17, 2013.

7          The defendant, Ronald E. Brown, is present with

8     counsel.  The Assistant U.S. Attorneys is present.)

9          THE CLERK:  Criminal action 12-10025, United States v.

02:01 10   Ronald Brown.

11          Would counsel please state your name for the record.

12          MR. SHINE:  Your Honor, good afternoon.  Kenneth

13     Shine, I appear on behalf of the United States of America.

14          THE COURT:  Good afternoon, counsel.

15          MR. ANDREWS:  Good afternoon, your Honor.  Michael

16     Andrews on behalf of Mr. Brown.

17          THE COURT:  Good afternoon, Mr. Andrews.

18          Good afternoon, Mr. Brown.

19          THE DEFENDANT:  Good morning, your Honor.

02:01 20        THE COURT:  Counsel, I know we're here for sentencing.

21     Before we begin, I just want to make sure I received and

22     reviewed all of the written materials that the parties wanted

23     me to.

24          I've received and reviewed the presentence report as

25     revised -- I wrote down July 30th, is that -- that's correct.

1              PROBATION OFFICER:  Correct.

2              THE COURT:  The defendant's sentencing memo filed

3     December 10th, and the government's sentencing memo that was

4     filed December 11th.

5              I think those are all the written materials,

6     Mr. Shine?

7              MR. SHINE:  That's correct, your Honor.

8              THE COURT:  Mr. Andrews?

9              MR. ANDREWS:  That's correct.

02:01 10         THE COURT:  Mr. Andrews, have you had a chance to

11    review the presentence report and discuss it with Mr. Brown?

12             MR. ANDREWS:  I have, your Honor.

13             THE COURT:  And as to -- I know there was some

14    objections, but I don't recall that any of them were in regards

15    to the factual contents of the PSR, they were to the base

16    offense level calculation, if I'm recalling correctly.

17             MR. ANDREWS:  I believe so, your Honor.

18             THE COURT:  And I understand the government didn't

19    have any objections?

02:02 20         MR. SHINE:  No objection to the PSR as drafted.

21             THE COURT:  And in terms of the guideline

22    calculations, Mr. Andrews, do you want to be heard any further

23    on those objections?  I have reviewed them.  I think they are

24    in two parts, one was in regard to the argument I understood

25    you were reserving as to whether or not the ACC, Armed Career

1    Criminal, predicates needed to be proven and found by the jury,

2    and I think the other issue was to whether or not the jury was

3    instructed about the brandishing enhancement.

4         MR. ANDREWS:  That's correct, your Honor.  And I set

5    those forth in my objections to the presentence report.

6         The first objection I reiterated and pleaded in my

7    sentencing memorandum, so your Honor is correct, I'm attempting

8    to preserve the record.  As long as you tell me that I'm not

9    waiving anything by not engaging in further argument, which I

02:03 10   don't believe I am, I'll rely on my filings.

11        THE COURT:  Okay.

12        And that's true as to the second issue.

13        Counsel, just so the record is clear, I have

14   considered both of those arguments, and I think, Mr. Andrews,

15   as your papers recognize, the Almendarez-Torres, 523 U.S. 224

16   (1998) is still good law, and I do believe I'm still bound by

17   it.  The Alleyne case, which came down more recently, very

18   explicitly didn't overrule it, and I think I'm bound by that

19   Supreme Court ruling, or the state of the law at the moment,

02:04 20   counsel.

21        In regards to the 924(c) brandishing argument, I

22   didn't -- I haven't had a chance to look at the transcript, but

23   I did, counsel, look at the jury instructions that I read to

24   the jury, and I did explicitly instruct them that one of the

25   elements the government had to prove and they had to find was

1    that Mr. Brown had intentionally brandished a firearm.  I have

2    to presume that the jury followed my instructions, so I think

3    that's appropriately before me for the enhancement, the

4    84-month enhancement.

5         Counsel, anything further about the base offense level

6    calculations?

7         MR. SHINE:  No.  The government is in agreement with

8    the U.S. Probation Department's calculations.

9         THE COURT:  And, Mr. Andrews, I understand your

02:05 10  position reserving your objections.

11        MR. ANDREWS:  Yes, your Honor.  I believe the

12   additional objections just had to with recalculation.

13        THE COURT:  Right, related to those two issues.

14        MR. ANDREWS:  Exactly, your Honor.

15        THE COURT:  Counsel, with all of that said and based

16   on what I've said in response to the specific objections, I

17   just note, and I adopt Probation's calculation that the base

18   offense level, due to operation of the Armed Career Criminal

19   provision, 4B1.4, is 33 with no adjustment for acceptance; and

02:05 20  in terms of the Criminal History Category, other than the

21   objection to the enhanced -- the enhancement based on the Armed

22   Career Criminal, I don't think there were any other objections,

23   and that Criminal History Category, which would otherwise be

24   II, is increased to Category IV, again, under the ACC

25   provision.

1          With that said, the advisory guideline sentencing

2    range is 188 to 235 months; and on-and-after 84 months on what

3    I believe is Count Two, the 924(c) charge; the supervised

4    release range for Count One is one to three years, for Counts

5    Two and Three it's two years to five years; and, counsel, the

6    fine range is $17,500 to $175,000; and restitution, I think, is

7    not an issue here, Mr. Shine, because I believe the money was

8    recovered.

9          MR. SHINE:  That's correct, your Honor.  The $264

02:07 10    (sic.) was taken and was recovered at the scene.

11          THE COURT:  Okay.

12          The special assessment here is a total of $300, $100

13    for each count.

14          Mr. Shine, I'll hear the government's recommendation.

15          MR. SHINE:  It's troubling that we're here today on

16    this particular case with this individual, Mr. Ronald Brown.

17    And unfortunately, the reason we're here today is because

18    Mr. Brown has made us here.

19          This case starts as a result of a robbery of $664.  On

02:07 20    October 31, 2011, Mr. Brown and another individual, armed with

21    loaded semiautomatic pistols, made a decision -- this wasn't

22    some sort of random act, this wasn't some Devil May Care prank,

23    this wasn't just a drug crazed rushing in, doing something for

24    the sake of it -- armed with loaded semiautomatic weapons, a

25    roll of duct tape, which was secreted inside a black leather

1    bag, they entered the MetroPCS in Codman Square.  They didn't

2    go there to buy phones, they went there to rob the place.

3           The clerk, young woman, who was present, would have

4    submitted without the slightest show of force.  The Court had a

5    chance during motions to suppress and during trial to observe

6    her size, her stature, her complete fear.  They didn't do that.

7           Now, they'll try to make it out to be that this was

8    some random act, you know, some casual sort of happening.  You

9    don't walk around Dorchester with a roll of duct tape; you

02:09 10   don't walk around Dorchester with two semiautomatic firearms;

11   you don't walk around Dorchester with your identity hidden

12   wearing two jackets each, hats, sunglasses, scarf to hide their

13   faces; you don't walk around Dorchester with work gloves on;

14   and you don't walk around Dorchester with Scotch tape all over

15   your fingers, obscuring your fingerprints.  You walk around

16   with that situation when you decide you're going to do

17   something, and that day they decided they were going to rob the

18   MetroPCS store.

19          They walked into the store.  The Court had the ability

02:09 20   to watch, as did the jury, the robbery.  They walked in.

21   Mr. Lynch Arthur stood to the right, Mr. Ronald Brown, the

22   defendant, walked towards the clerk and distracted her by

23   feigning interest in a phone.  As he did that, which was all

24   captured on video, Lynch Arthur walked around back, he

25   displayed a firearm, the victim went back, went into a back

room, Brown came around.  Once in back, we observed on video

both of them pulling the roll of duct tape out of the bag which

they were carrying and duct-taping her hands and her feet, and

then duct-taping her mouth and placing her on the ground as

they started to ransack the store.

$664 and some change is what they got.

They left her lying on the ground, a gutless act.  As

they left, the bell rang as they went out the front door.  We

observed the clerk getting up, removing the tape, waiting a

second or two, composing herself, and then I think, which was

perhaps the most telling part of this entire trial, was I

observed her hopping because she couldn't get the damn tape off

her ankles to go lock the door so they wouldn't come back and

get her again.  We observed her hopping to a door as she was

laid on the ground duct-taped.

In a short period of time, the individuals were

located, individuals that fit the description.  Now, these

individuals were smart enough to have worn extra clothing,

dropped the clothing along the way, an opportunity to take

their guns, take the $664 and some change, and the duct tape,

put it in a bag and then dump that into a dumpster, a little

blue recycle dumpster, along the way and come walking along

like nothing happened.  They were a hundred yards from the

Codman Square train station on a sunny afternoon in Dorchester.

Officer Golden, who is here today, observed them, he

talked to them, noticed something little awry.  He kept on

watching Mr. Brown picking something, peeling something from

his hands, unsure what he was doing.  We know now that Brown

was taking the Scotch tape off his fingers.  He used the Scotch

tape to make sure there were no fingerprints, and of course,

the Court knows from the trial there were no fingerprints

located at the scene of the crime, because Brown had Scotch

tape on his fingers.  The other individual, Mr. Lynch Arthur,

had on white gloves.

02:12          $664.  I read the PSR.  I've read it time and time

again.  I started looking, I said, What would drive somebody to

do this?  What would be the motivation?  I can tell you, Judge,

he seems like a good man.  He's had some problems in his early

life, he had five convictions early in his life, 1993 a drug

conviction, distribution of heroin; 1994, distribution of

heroin; another one in 1994, distribution of heroin; 1995,

another distribution of heroin, suggests to me that over the

short period of time he had a problem with heroin.  He did

short stints of jail time.  He then had a more serious crime in

02:12  2000 where he was given a lengthy sentence for assault and

battery with a dangerous weapon.  So between that period of

time, from '94 to 2000, pardon the expression, he was off the

radar, seemed to be doing something with his life.  2000 he got

a big hit, he went to jail.  He got out of jail, and from that

point on, I don't see him.  I see that he has a job, I find out

1    that he has a good job.  I find out that he's transporting

2    artwork for the company as a secured driver.  He has a CDL

3    license.  He seems to be doing everything right.  He seems to

4    be pulling himself up and trying to turn his life around and

5    straighten it out.  I don't know what caused this.  I don't

6    know what caused him that day to decide to do this.

7         We do know that while he was out in the Midwest, he

8    stopped at his brother's house.  We do know, because his

9    brother testified, he purchased three firearms.  We recovered

02:13 10   two of them, we don't know where the other one is.  Why he

11   would go out to Arizona to buy firearms, I don't know, but

12   those are the firearms he purchased in Arizona, his brother

13   did, that he used during this robbery.

14        I don't know what to tell you, Judge.  I know that the

15   public at this point -- at a certain point you say, enough is

16   enough, we can't do any more.  He's had every opportunity in

17   the world to help himself out, and this is the path he chose.

18   So we're not here over $664.  We're here over the decision that

19   Ronald Brown made that particular day with Mr. Lynch Arthur to

02:14 20   rob that store.

21        The impact upon the teller, the clerk, is sizable.  We

22   had a chance to observe her.  The impact upon the community,

23   people with loaded firearms robbing these type of stores.  The

24   public has the right to be safe, the public has a right to be

25   able to go around those areas and not have to deal with the

```
 1   likes of Ronald Brown.
 2           With that said, Judge, the advisory guideline range is
 3   272 to 319 months.  The maximum penalty is life imprisonment,
 4   and I have every right to stand here before you and suggest to
 5   you that life imprisonment -- I could have filed an enhancement
 6   and it would have been a mandatory life imprisonment in this
 7   particular case, we chose not to.  We chose to think that there
 8   would be some value, some redeeming value, to him.  And I still
 9   hold that out.  Unfortunately, there's going to be a very
10   lengthy extended period of time that he needs to be
11   incarcerated.  He needs to understand that this behavior cannot
12   be accepted.  It's not accepted today, and it's not going to
13   been accepted between 20 and 30 years when he is released.
14   He's 40 years old.  A guideline recommendation of 272 to 319
15   months.  The government went mid-range on the guidelines at a
16   sentence of 300 months.  It's 25 years.  He'll be 65 years old
17   when he gets out, hopefully his life will be in order.
18           THE COURT:  Counsel, you know, I'm going to ask you
19   what is perhaps the harder question to ask here, and I'm going
20   to hear from Mr. Andrews in a moment, but what I understand
21   from the defense memo is that the defense is asking me to
22   impose not an unsubstantial sentence, which reflects the
23   minimum mandatory and the on-and-after 84 months, so 264
24   months, and I think -- I don't know, Mr. Shine, if I've asked
25   this question of you in the past, but I've certainly asked it
```

1   of your colleagues.  You recognize that Mr. Brown is 40.  Under

2   either scenario, right, he's either going to be imprisoned for

3   22 years or 25.  So what in the government's estimation -- and

4   I think it's fair to say the Court struggles with this issue --

5   what is the difference between sentencing him for over two

6   decades so that he's in prison until he's 62 or imprisoning him

7   for 25 years until he's 65?

8           MR. SHINE:  I'm not going to suggest we're punishing

9   him because he went to trial, that would be wrong, I would not

02:17 10   do that.

11           I think there are facts in this case which warrant a

12  sentence which is a guideline sentence.  As this Court knows, I

13  am a guidelines person.  I believe the guidelines are fair and

14  accurate.  His sentence is crafted on his personal criminal

15  behavior.  It is driven by a minimum mandatory sentence, those

16  are outside our hands, but the pure guidelines -- and the other

17  individual, Mr. Lynch Arthur, I also asked for a guideline

18  sentence.  He had as severe a record but did not have the

19  minimum mandatory Armed Career Act, and I asked for a sentence

02:17 20  which reflected a guideline sentence on him.  I think the Court

21  sentenced him to 228 months, and I think his guideline ranges

22  were just shy of that.  I think he was 151, plus 84.  So I

23  think the Court sentenced him ten months below his advisory

24  guidelines.  He pled guilty, he got the benefit of the three

25  points.  Mr. Brown went to trial, Mr. Brown had a lengthy,

protracted, and I might say very intense three-day motion to

suppress hearing.  Following the motion to suppress with the

overwhelming evidence the government provided, we went to

trial.  The trial lasted five days, the jury was out less than

a half an hour by all accounts.  It was a strong, strong

government case.  The evidence was overwhelming.

I just -- I believe a sentence within the guideline

range is an appropriate sentence in this case.  I don't see

that Mr. Brown warrants a departure, not on the facts of this

case and not on his criminal history.

THE COURT:  And, counsel, in terms of -- I

understood -- just as a technical matter, I understood the

recommendation of 300 months to essentially be 216 months, plus

on-and-after 84.

MR. SHINE:  Plus on-and-after 84, yes, your Honor.

THE COURT:  And your -- do you have any position as to

supervised release?

MR. SHINE:  We would ask, as we did in the other case,

for a period of five years of supervised release, the maximum

permissible under the statute.

I'm not going to ask for a fine because I do not

believe Mr. Brown would be in any position today or tomorrow or

22 years from now to be in position to pay a fine.

I would, of course, ask for the $300 mandatory special

assessment.

1           THE COURT:  Okay.

2           MR. SHINE:  Thank you.

3           THE COURT:  Okay.

4           Mr. Andrews.

5           MR. ANDREWS:  Thank you, your Honor.

6           Your Honor asked a question of the government:  What's

7     the difference between 22 years and 25?  You know, it's

8     difficult for me to stand here ask the Court to sentence my

9     client to 22 years.  I'm not going to ask you to sentence --

02:19 10     I'm going to ask you to sentence him to the lowest possible

11     sentence that you're legally -- lowest legal sentence.

12           THE COURT:  And I understand that.

13           MR. ANDREWS:  But my brother's answer was that, you

14     know, what's the difference was basically he said he believes

15     in the guidelines, which is in any other words a rejection of

16     principle of individualized sentencing and a rejection of any

17     analysis under the 3553(a) factors, though the Court is bound

18     to do so.

19           Under the current sentencing structure, sentences must

02:20 20     be sufficient, but not greater than necessary.  An analysis of

21     3553, we're looking to punish Mr. Brown for what happened.

22     Twenty-two years is an extraordinary punishment.  Deterrence,

23     both general and specific, certainly specific deterrence as to

24     Mr. Brown and certainly general deterrence, a far harsher

25     sentence than anyone prosecuted in the state system would

receive for a similar crime.  And it sends a message -- sending

messages is one of the goals of sentencing.  It certainly sends

an extremely strong message.  As a matter of fact, the Court

should look at protecting the public.  Mr. Brown's

incarceration for to 22 years will certainly protect the public

for a very long time.  We're talking about a sentence that when

Mr. Brown is released, I will be 75 years old.  That seems a

very long time, if I'm so lucky to be here, it seems like a

very long time from now.

02:21      My brother talked about having to go through trial.

Without getting into particulars, we engaged in repeated plea

negotiations that were unfruitful.

My brother mentioned his criminal history.  The ACC

penalty is driven by four drug convictions that occurred --

arrests that occurred between September 1993 and June 1994.  So

20 years ago.  These are all handled in Roxbury District Court,

these were all for small amounts of heroin during a troubled

period of my client's life, and because of those four

convictions, he is here before you facing this minimum

02:22 mandatory 22 years.  But for those four convictions -- and I

know you can't take away what's happened -- but for those four

convictions, his guidelines, he's in criminal history III, but

his crime, the guidelines would be 51 to 63 months with a

seven-year or 84-month on-and-after sentence, his guidelines

would be 135 to 147 months.  So those four petty drug

1   convictions, there's nothing else to call them, back in 1993 --

2   when the arrests occurred in 1993, '94, elevate his guideline

3   sentence from a low end of 135 to a low end of 170, something

4   in that vicinity, 172.

5        I mentioned in my memo there's -- his co-defendant was

6   sentenced, I believe, to 19 years.  If my memory is correct

7   from reading the government's memorandum in that case and the

8   defense memorandum, his guideline range was 262 months.  So the

9   Court varied approximately three years downward on Mr. Lynch

02:23 10   Arthur.  The variance I seek in this case is a modest eight

11   months or six months, it's 272, I'm -- no, it's eight months,

12   your Honor, yes, 264.

13        It is a tragedy that I stand here, because Mr. Brown

14   was employed after he was released.  He worked in a pet store,

15   he worked as a delivery man, then he got his commercial

16   driver's license, and he was a good employee.  He worked for

17   six, seven years for the art company, handling art and driving

18   across country.  Really in representing him these last two

19   years, he's polite, he's articulate.  He's had absolutely no

02:24 20   disciplinary problems whatsoever in the two years being held at

21   Plymouth.  And the penalty he faces for this is simply

22   enormous.

23        Now, I think it is incumbent upon the government, if

24   they are to argue for an additional three years, to say why 22

25   years is not sufficient to punish, to deter, to protect, and I

1    don't think it's an argument that can reasonably be made.

2         It was a serious crime, luckily no one was hurt.

3    There was no violence towards -- no overt physical violence

4    towards anyone, including the police at the time he was stopped

5    and the arrest.

6         It is really a very tragic case, your Honor, and I'd

7    ask the Court to exercise its discretion, understand that a

8    sentence of 22 years is an absolutely enormous sentence, and it

9    is a sentence that is sufficient, I believe it's greater than

02:25 10   necessary, but it's all the Court can do, it's all I can ask

11   for, and it's certainly a sufficient sentence, and that's what

12   the law is.  Thank you.

13        MR. SHINE:  Just briefly, if I might, and then I'll

14   address the concern that the Court had and Mr. Andrews --

15        THE COURT:  And I'll give Mr. Andrews the last word.

16        MR. SHINE:  And I do apologize.  But this was not just

17   a random -- and I keep trying to take us out of that -- it's an

18   unfortunate thing we do, your Honor, in this building is we see

19   these robberies and so many of them are random, drug-driven,

02:26 20   crazed, stupid acts.  This was not that act.  This was a

21   planned, choreographed act.  There was injury done.  This young

22   girl -- and I apologize if I keep repeating that -- was taken

23   into a back room.  All Brown would have to have done is

24   brandish -- show the firearm.  Lift his jacket up, show he had

25   a weapon on him.  All he had to do.  She would have given up

1    the cash box.  He took her in back, he duct-taped her.  He put

2    her on the ground, he duct-taped her mouth.  This is one of the

3    most violent types of acts, short of discharging a firearm,

4    that I could imagine.  And those guns were racked and loaded.

5    Those guns could have gone off where we'd be in a completely

6    different position.

7         I maintain my position because this is not a generic

8    run-of-the-mill robbery, this is a serious robbery that was

9    well-planned, well-executed by two individuals, that's why my

02:27 10   recommendation is what --

11        THE COURT:  I understand, Mr. Shine.

12        Mr. Andrews, I'll give you the last word.

13        MR. ANDREWS:  I didn't want to bring it up, but when

14   Mr. Shine started, he said they were making it out to be

15   random.  I didn't say it was random in my sentencing memo, I

16   didn't use the word "random" when I was speaking to you.  I

17   tried to stick to law, your Honor, which was sufficient, but

18   not greater than necessary.

19        No one here has made light of the offense.  I

02:27 20   certainly haven't, Mr. Brown hasn't.

21        You know, Mr. Shine in his memo regarding Mr. Lynch

22   Arthur describes how Mr. Lynch Arthur duct-taped the young

23   woman.  In his memo regarding Mr. Brown he says that at one

24   point that Mr. Lynch Arthur duct-taped the young woman and then

25   later on he says that Mr. Brown duct-taped the young woman.

1    Now he's saying that Mr. Brown duct-taped the young woman.

2    It's really not important because it was a robbery carried out

3    by two gentlemen, two men.  The facts are clear that Mr. Brown

4    didn't do it, but it was a robbery.  No one said it was random.

5    And he will be severely punished, and the sentence of 22 years

6    fully reflects the seriousness of the crime, it fully reflects

7    the flight, terror that the clerk underwent, fully reflects,

8    you know, that carrying loaded firearms or robbing a store in a

9    neighborhood cannot be permitted.  It addresses all of those.

02:28 10         You know, I know the government likes guidelines, but

11   we've gotten to a point where district court judges can look at

12   the individual before them, look at the individual crime, and

13   make a determination about what is a sufficient sentence, and

14   22 years -- I don't think it can be reasonably argued that 22

15   years is not a sufficient and a reasonable sentence.

16         Thank you.

17         THE COURT:  Thank you, Mr. Andrews.

18         Mr. Brown, you're not required to, but if you'd like

19   to address me at this point, I'll hear you.

02:29 20         THE DEFENDANT:  Thank you, your Honor.

21         I just want the Court to know I understand that this

22   case is serious and the gravity of the charges that I've been

23   convicted of.

24         The clerk is not here, but I still want to apologize

25   that she shouldn't have went through that.  She didn't deserve

1    it.  I'm sorry that she did go through that.

2          That's it, your Honor.  Thank you.

3          THE COURT:  Okay.

4          Counsel, Mr. Brown, I'm going to take a brief recess,

5    I'll come back to the bench.

6          Thank you.

7          THE CLERK:  All rise.

8          (Recess taken.)

9          THE COURT:  Thanks to counsel on both sides for your

02:41 10    recommendations today.

11          Thank you, Mr. Brown, as well, for your statement to

12    this Court.

13          Mr. Brown, in determination of what a reasonable

14    sentence would be here, I have and I must consider a number of

15    factors -- and you can be seated, I'm going to explain my

16    reasons, and then I'll ask you to stand when I formally impose

17    sentence -- I have and I must consider a number of factors:

18    The advisory guideline sentencing range; the nature and

19    circumstances of your crimes; your personal history and

02:41 20    characteristics; the need for the sentence to do a number of

21    things, that is, to reflect the seriousness of the offense,

22    promote respect for the law, provide just punishment, adequate

23    deterrence; and avoid unwarranted sentencing disparities; and

24    all of the factors under Title 18 United States Code 3553(a).

25          Mr. Brown, I want to turn first to the crimes that

you've committed in this case; namely, the armed robbery of the

MetroPCS store.  I won't rehash all of the events because I

know they're quite clear based on the suppression hearing and

the trial to all of the folks that appear in this courtroom

before the bar today, but on October 31, 2011, you and your

co-defendant, Mr. Arthur, engaged in what I think everyone

agrees was not a random act, but an act that required some

organization, there was some planning involved regarding the

time of the crime, the entry and exit from the store, and the

tools and weapons that you used to effect this crime.  And this

was all to rob a cell phone store.  In the course of committing

this crime, the victim, who I heard from during the course of

these proceedings, the victim was duct taped.  You brandished a

firearm, and she was put in reasonable fear for her life and

for serious injury.  I agree with Mr. Andrews, there's no

physical harm here, I don't think that's disputed at all, but I

certainly think that there was serious psychological harm, and

I think that was reflected in the testimony and the appearance

of the victim in this case here.

Mr. Andrews makes the point, which I think is a fair

one, that this was certainly not the most sophisticated crime

in terms of planning and organization, not one that required or

reflected great planning, and one that certainly did not result

in great money to you, I believe the figure was $664.  But I

think that that argument, in some ways, cuts both ways, and I

think this is what Mr. Shine was alluding to in his arguments

on behalf of the government; that is, was this amount of money,

a little over $600, worth the cost of harm and the risk of harm

to the clerk in this case and to the community of Dorchester?

That is, no matter the result, you willingly participated in a

crime of violence, using a gun, committing that crime not

knowing what the financial yield would be.  And I think it's

these facts that reflect a willingness to engage in criminal

acts, including crimes that involve threats of harm, which is

concerning to this Court, obviously.

        Mr. Brown, I've also considered your personal history

and background.  This is certainly not the first crime you've

committed or been convicted of committing, and sadly, it's not

the first violent felony.  Note has been made of your

conviction in 2000 for assault and battery with a dangerous

weapon for which you were sentenced to a number of years in

prison.  You were also convicted of four serious drug offenses,

which were reflected in the PSR, each of which involved

possession with intent or distribution of a class A controlled

substance.

        I note, as Mr. Andrews noted, the slew of these drug

convictions occurred when you were 20 years old, but I'm

concerned that the prior violent felony was committed sometime

later, when you were 25, and the instant offense, the one that

also involved a threat of violence, occurred, by my

1    calculations, when you were about 38 years old.

2          Mr. Brown, certainly your criminal history is not the

3    sum total of your background, and I wouldn't suggest otherwise.

4    I've had a chance to reflect on the information in the PSR and

5    Mr. Andrews' memo about your personal background.  My memory is

6    you were born and for the most part grew up here in the city,

7    except for a short time when you were in Florida.  You were

8    raised largely by your mother, and I think in a stable home

9    environment until your mother's boyfriend, if I recall, came

02:46 10    into the picture.  You witnessed violence in your home.  You

11    were certainly put at a young age in the position of having to

12    protect her from some of that violence.  And when that violence

13    got to a point when you were living in Florida, your mother had

14    the presence of mind to send you back to Massachusetts, and she

15    followed you sometime later.  Certainly, this is a difficult

16    and trying situation for anyone, particularly a child, and I

17    think that was followed by times when you were bouncing around

18    from home to home.  I think the other positive influence in

19    your life was your aunt, but even your aunt was assisting you

02:47 20    while she was living in a rough neighborhood herself.

21          I believe you have several children, if I recall, a

22    teenage son and two much younger daughters.  It seems as if you

23    don't have contact with your son, I wasn't clear on the contact

24    you have with your daughters, but I'm aware that you have

25    several children.

1          I don't believe you have any current issues with drugs

2     or alcohol, and I note that you did complete your GED, I think,

3     when you were previously incarcerated.  I think that might have

4     been during some of your -- when you were incarcerated on your

5     drug charges, the assault and battery charge.

6          You've had some employment, which Mr. Andrews

7     mentioned, as a driver and delivery person.  You have a number

8     of skills and professional interests, a number of them

9     creative.

02:48 10          I've considered, Mr. Brown, the advisory guideline

11     sentencing range, which is 188 to 235 months, plus on-and-after

12     84 months on a 924(c) charge.  You know, as my questions to

13     Mr. Shine suggested, I think sentences -- any of the sentences

14     that we've discussed today are steep sentences, ones that I

15     don't take lightly at all, and I note that your -- the

16     guideline sentencing range is driven by the Armed Career

17     Criminal provision that reflects that you've engaged in a

18     series of crimes over your adult life, including not just the

19     slew of serious drug offenses that took place in a condensed

02:49 20     time, but also the more serious assault and battery/dangerous

21     weapon that happened sometime later.

22          And sadly, I can't say -- and I know what Mr. Andrews,

23     the arguments Mr. Andrews has made today about not imposing a

24     sentence that's greater than necessary, and I agree with that

25     argument, and I've given that much consideration in my sentence

1      today -- but I can't say that the Armed Career Criminal

2      provision doesn't aptly apply to your situation and your

3      background, Mr. Brown, given both the timing and the substance

4      of those previous convictions.

5           Now, you've heard, Mr. Brown, that the government

6      urges me to impose a much greater sentence of 300 months, which

7      is the midpoint of the applicable guideline sentencing range.

8      And, Mr. Shine, I don't think it's outrageous that you're

9      advocating for that here.  And certainly, Mr. Andrews urges me

02:50 10   to impose the minimum required by law, which amounts to 22

11     years.  Post-Booker, Mr. Andrews is correct, I must make a more

12     searching inquiry regarding the appropriate sentence, and I

13     have done so here, and I agree that a serious sentence

14     reflecting the seriousness of the offense and promoting respect

15     for the law and both adequate and general deterrence is

16     appropriate here.

17          And, counsel, based on the arguments on either side,

18     I've decided, and Mr. Brown, I'm going to impose a sentence

19     that's much closer to your counsel's recommendation than the

02:51 20   government's recommendation of 272 months.  That reflects 188

21     months at the very low end of the guideline sentence with the

22     on-and-after time of 84 months.

23          I don't adopt a sentence reflexively that's within the

24     guideline range, but I think that, given my review of your

25     criminal history here and the sequence of it and the increase,

1    sadly, in violence, your willingness to engage in crimes

2    involving threats of violence, I think it's appropriate to

3    sentence you to a sentence that does reflect the Armed Career

4    Criminal provision.  But I do so at the low end because I do

5    agree with Mr. Andrews that it's hard to say what greater

6    purpose would be served here or what greater sentencing purpose

7    would be served here by a 25-year sentence than the one that

8    will be served by a 22-year sentence.

9         I also should just note for the record I'm aware of

02:52  10    the sentence that I gave to Mr. Arthur.  I should note that

11    that was a sentence that was lower than what the government

12    recommended, but I also, having thought further about that

13    sentence, recall that it reflected a variance reflecting some

14    mitigating factors about Mr. Arthur's background and mental

15    health that I don't find that are present here.  And I think

16    that I need to, for you, Mr. Brown, make a particularized

17    determination of the appropriate sentence, and I think 188

18    months with the 84 months on-and-after is one that does so.

19         For all of those reasons, I do find that this

02:53  20    sentence, which amounts to 272 months, is a reasonable one,

21    given consideration of all of the factors, including the nature

22    of the crime, your personal background, and all of the purposes

23    of sentencing under 3553(a).  I think it's sufficient, but not

24    greater than necessary, to achieve all of those goals.  I

25    understand that I could depart by more time down to the minimum

1  mandatory, but I choose not to exercise my discretion in that

2  manner.  For all of those reasons, that will be my sentence.

3          Counsel, just for the benefit -- your benefit, I will

4  just announce the sentence I'm about to impose, which is, as I

5  said, 188 months on Counts One and Three to be served

6  concurrently; 84 months on-and-after on Count Two; five years

7  supervised release, which is on -- Mr. Orze, I think that's on

8  Counts Two and Three, and on Count One would be concurrent for

9  three years.

02:54 10          PROBATION OFFICER:  Correct.

11          THE COURT:  I'm not imposing a fine based on your

12  inability to pay a fine.  No restitution is warranted here, and

13  I'll also impose the $300 special assessment.

14          Any objections or any further notes from the

15  government?

16          MR. SHINE:  Nothing from the government, your Honor.

17  Thank you very much.

18          THE COURT:  Mr. Andrews?

19          MR. ANDREWS:  No, your Honor.

02:55 20          THE COURT:  Mr. Brown, I'm going to ask you to stand

21  now.

22          Sir, pursuant to the Sentencing Reform Act of 1984 and

23  having considered the factors enumerated at Title 18, United

24  States Code, 3553(a), it is the judgment of the Court that

25  you're hereby committed to the custody of the Bureau of Prisons

1    to be imprisoned for a term of 272 months.  This term consists

2    of 188 months on Counts One and Three to be served

3    concurrently, and 84 months on Count Two to be served

4    consecutively to the sentence on Counts One and Three.

5         I make a judicial recommendation that you participate

6    in educational and vocational training programs to help you

7    prepare to reenter the workforce upon your release.

8         I also order that upon your release you shall be

9    placed on a period of supervised release of five years.  Again,

02:56 10   this will be three years -- three years' supervised release on

11   Count One and five years on Counts Two and Three, all to be run

12   concurrently.

13        Within 72 hours of release from custody of the Bureau

14   of Prisons you shall report in person to the district to which

15   you are released.

16        I'm not imposing a fine, given my finding that you

17   can't afford to pay a fine.

18        In terms of your supervised release, there's certain

19   conditions of that release.  You shall not commit another

02:56 20   federal, state, or local crime, and shall not illegally possess

21   a controlled substance.  You shall refrain from any unlawful

22   use of a controlled substance, and you shall submit to a drug

23   test within 15 days of your release from imprisonment, and if

24   Probation thinks it's appropriate, to random drug tests

25   thereafter, not to exceed 104 drug tests per year.

1          You shall submit to the collection of a DNA sample as

2     directed by the Probation Office, and you shall comply with all

3     the standard conditions that will be reflected in the judgement

4     that I will issue.

5          You are prohibited from possessing a firearm,

6     destructive device, or other dangerous weapon.  And I shall

7     further order that you pay a special assessment of $300, which

8     shall be due immediately.

9          Mr. Orze, anything else in terms of conditions?

02:57 10     PROBATION OFFICER:  No, your Honor.

11     THE COURT:  That shall be the judgment of the Court.

12     You can be seated.

13          Counsel, anything else other than advising Mr. Brown

14     of his appellate rights?

15     MR. SHINE:  No, your Honor.  Thank you.

16     MR. ANDREWS:  No, your Honor.

17     THE COURT:  Mr. Brown, I need to advise you that you

18     have a right to appeal your conviction or to appeal your

19     sentence, particularly if you think the sentence was contrary

02:58 20     to law.

21          If you're unable to pay the cost of appeal, you may

22     ask permission to have those costs waived and appeal without

23     paying.

24          You must file any notice of appeal within 14 days

25     after the entry of judgment.  If you request, the clerk of this

1  court will immediately prepare and file a notice of appeal on

2  your behalf.

3          Do you understand?

4          THE DEFENDANT:  Yes, your Honor, I do.

5          THE COURT:  Okay.

6          Thank you to counsel.

7          And, Mr. Brown, good luck to you.

8          THE DEFENDANT:  Thank you.

9          THE CLERK:  All rise.

02:58 10         (Court adjourned at 2:58 p.m.)

11              - - - - - - - - - - - -

12                      CERTIFICATION

13         I certify that the foregoing is a correct transcript

14  of the record of proceedings in the above-entitled matter to

15  the best of my skill and ability.

16

17

18

19  /s/Debra M. Joyce_____          February 28, 2014_____
    Debra M. Joyce, RMR, CRR          Date
20  Official Court Reporter

21

22

23

24

25